AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

In the Matter of the ~~Search of~~
*(Briefly describe the property to be searched or identify the person by name and address)*

Use of a Cell-Site Simulator to Identify the Cellular Device Used by Michael Wayne Anderson

Case No. 1:17MJ-633

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the ____Southern____ District of ____Ohio____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 1956(h) | Money Laundering; |
| 21 U.S.C. 841(a)(1) | Distribution of Controlled substances; |
| 21 U.S.C. 843(b) | Use of communication Facility in the commission of a drug trafficking offense; |
| 21 U.S.C. 846 | Conspiracy to Possess with Intent to Distribute a Controlled Substance. |

The application is based on these facts:

See Attached.

☐ Continued on the attached sheet.

☑ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Matthew F. Wenker, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 8/22/17

_____
*Judge's signature*

City and state: Cincinnati, Ohio

Hon. Karen L. Litkovitz, U.S. Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| In The Matter Of The Use Of A Cell-Site Simulator To Identity The Cellular Device Carried By Michael Wayne Anderson | Case No. _____ <br><br> **Filed Under Seal** |

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, Matthew F. Wenker, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 to authorize law enforcement to employ an electronic investigative technique further described in Attachment B, in order to identify the cellular device or devices carried by Michael Wayne ANDERSON (the "Target Cellular Device"), described in Attachment A.

2. I have been employed as a Special Agent (SA) with the Federal Bureau of Investigation (FBI) since July have 2011, and have conducted investigations into criminal enterprises, narcotics investigations, organized crime, and violent crimes to include the unlawful possession and possession with the intent to distribute of controlled substances, as well as the associated conspiracies in violation of Title 21, United Stated Code, Sections 841(a)(1) and 846. My investigative experience is derived from working on the Mexican Border in Sierra Vista, Arizona, the U.S. territory Puerto Rico, and Cincinnati, OH. Before being employed as a SA with the FBI, I was a Special Operations U.S. Army Ranger with four combat deployments to Afghanistan and Iraq. My formal education consists of a Bachelors of Accounting and a Masters of Business Administration (MBA).

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. This Court has authority to issue the requested warrant under Federal Rule of Criminal Procedure Rule 41(b)(1) & (2) because the Target Cellular Device is currently believed to be located inside this district. Pursuant to Rule 41(b)(2), law enforcement may use the technique described in Attachment B outside the district provided the device is within the district when the warrant is issued.

5. Based on the facts set forth in this affidavit, there is probable cause to believe that an enterprise, based in Culiacan, Mexico, is operating within the Southern District of Ohio, and elsewhere throughout the United States, to commit violations of federal criminal laws, including, but not limited to: conspiracy to launder monetary instruments, in violation of 18 U.S.C. § 1956(h); the distribution of controlled substances, in violation of 21 U.S.C. § 841(a)(1); use of a communication facility in the commission of controlled substances trafficking offenses, in violation of 21 U.S.C. § 843(b); and conspiracy to commit controlled substances trafficking offenses, in violation of 21 U.S.C. § 846. There is also probable cause to believe that the identity of the Target Cellular Device will constitute evidence of those criminal violations. In addition, in order to obtain additional evidence relating to the Target Cellular Device, its user, and the criminal violations under investigation, law enforcement must first identify the Target Cellular Device. There is probable cause to believe that the use of the investigative technique described by the warrant will result in officers learning that identifying information.

6. Because collecting the information authorized by this warrant may fall within the statutory definitions of a "pen register" or a "trap and trace device," *see* 18 U.S.C. § 3127(3) &

2

(4), this warrant is designed to comply with the Pen Register Statute as well as Rule 41. See 18 U.S.C. §§ 3121-3127. This warrant therefore includes all the information required to be included in a pen register order. See 18 U.S.C. § 3123(b)(1).

## PROBABLE CAUSE

7. In August 2015, FBI San Diego opened an investigation into a criminal enterprise based in Culiacan, the capital of the Mexican State of Sinaloa, which was operating throughout the United States. The criminal enterprise is led by JOSE ALBARRAN who coordinates bulk cash narcotic proceeds being picked up throughout the United States and then smuggled into Mexico through both electronic banking transactions and physical bulk cash movement. Since the inception of this investigation, the San Diego Cross Border Violence Task Force ("CBVTF") used multiple Undercover Officers ("UCs") and Confidential Human Sources ("CHSs") in a series of successful controlled money "pickups" in cities across the United States, following a common pattern. To date, investigators have completed several successful controlled pickups and/or seizures of U.S. currency in Cincinnati, Kansas City, New York City, and Boston area.

8. On April 18, 2017, the FBI SD UCE was asked to pick up around "$270,000" in bulk cash in Cincinnati, Ohio by calling a drug cartel member courier using telephone 859-240-1452 and stating code phrase "De parte de Canales." FBI Special Agents in Cincinnati, Ohio then received a Pen Register Trap and Trace Court Order and a Cell Site Location Order for the telephone number from the Honorable Magistrate Judge Karen L. Litkovitz. With the Cell Site location information Investigators were able to locate the phone to the vicinity of the Radius Condos at 44 Freedom Way, Cincinnati, OH 45202.

9. On April 20, 2017, investigators from FBI Cincinnati (FBI CI), FBI SD, and the Cincinnati Police Department (CPD) Narcotics Unit obtained verbal permission from building employees to enter the common areas, access points, and travel through to assist in the

3

investigation. While walking through a common area hallway, Law Enforcement could clearly hear a male speaking Spanish in condo unit 733. The FBI SD UCE then placed a call to the 859-240-1452 number which could be heard ringing inside of unit 733 and a conversation took place related to the pick-up of the bulk cash.

10. Investigators then discovered that condo unit 733 had an assigned parking spot number 270. Parking spot 270 contained a black BMW X6 SUV bearing Ohio temporary tag D410278. Previously on March 28, 2017, a physical surveillance was conducted by FBI CI in which known narcotics dealer, Michael Wayne ANDERSON, arrived at the Cincinnati/Northern Kentucky International Airport (CVG) and was picked up by the same black BMW X6 bearing Ohio temporary tag D410278.

11. During the evening of April 20, 2017, the CPD Narcotics Unit received a search warrant from the Honorable Judge Tyrone Yates of Hamilton County on the Radius condo unit 733 and black BMW X6 bearing Ohio Temporary tag 410278 parked in spot 270. The search yielded approximately $203,100 in bulk cash, two pistol firearms, and a photograph that states "TIJUANA MEXICO 2017" with Michael ANDERSON photographed riding on the back of zebra-donkey hybrid pulling a cart with Jose AVENDANO and Jesus DIAZ. At the time of the search warrant, Jose AVENDANO, his younger brother, Pedro AVENDANO, and Jesus DIAZ were located in the condo unit 733. All three refused to speak with investigators, but Jose AVENDANO appeared to be in charge and the one who was operating the target telephone 859-240-1452. The FBI SD UCE who spoke with the operator of 859-240-1452 advised that Jose AVENDANO's voice appeared to match that of the voice of the person he had spoken to. The three individuals all claimed they did not own the $203,100 in bulk cash or know who did. Jose AVENDANO claimed to own the two pistol firearms. Law enforcement released all three individuals pending further investigation. A search of the black BMW X6 bearing Ohio temporary

tag D410278 yielded a receipt for "Mr. Anderson" from the Princeton Board of Education for $100.00 on March 22, 2017.

12. On May 11, 2017, the FBI SD UCE operation was contracted to conduct a bulk cash pick-up of approximately $190,000 located in Cincinnati, Ohio from the user of telephone number 308-850-7339 by stating the code phrase "con el gordo."

13. On May 12, 2017, the FBI SD UCE contacted 308-850-7339 in which the user of the telephone identified himself as "GORDO" and that he currently had $190,000 in bulk cash from the sale of narcotics. FBI CI received a Pen Register Trap and Trace and Cell Site Location Order for the telephone number.

14. On May 14, 2017, law enforcement conducted a physical surveillance of the area in which telephone 308-850-7339 was located. Surveillance located and identified Jose AVENDANO aka "GORDO" in the vicinity of the telephone location.

15. On May 15, 2017, the FBI SD UCE met with Jose AVENDANO aka "GORDO" who stated that he currently had $65,000 but was waiting on a male black to deliver $129,000 in bulk cash in which AVENDANO described as someone he works closely with to distribute narcotics and consolidate bulk cash narcotics proceeds. AVENDANO stated the black male's cousin would drive to Las Vegas and pick up "40 to 50" kilograms each time and pay "$26,000" for each kilogram. The male black was described as owning a car dealership that would place a lien on high end vehicles that were being used by members of their drug trafficking organization. When an individual was arrested and law enforcement wanted to seize the vehicle, the black male could sue the county and win because the vehicle would have a lien from the dealership. AVENDANO advised that he would call the FBI SD UCE back once the black male arrived.

16. Jose AVENDANO then called the FBI SD UCE and advised to meet. The FBI SD UCE entered the rear door of AVENDANO's vehicle in which a male black later positively

5

identified as Michael ANDERSON was located. Jose AVENDANO and Michael ANDERSON provided the FBI SD UCE with approximately $190,680 in bulk cash.

17. On July 11, 2017, FBI SD UCE advised FBI CI that they had been requested to pick up approximately $120,000 bulk cash in Cincinnati, Ohio from "GORDO" using telephone 859-609-5689 by stating code phrase "on behalf of Chispas."

18. On July 13, 2017, the FBI SD UCE spoke with "GORDO" who confirmed that he has the $120,000 available for delivery. The FBI SD UCE advised that GORDO's voice appeared to be that of Jose AVENDANO. FBI CI received Pen Register Trap and Trace orders, and Cell Site Location orders for a known Jose AVENDANO telephone number 308-850-2607 and this new number 859-609-5689. The Cell Site Location orders revealed that both of the phones appear to be in the same location and most likely used by the same operator, aka Jose AVENDANO.

19. On July 17, 2017, Michael ANDERSON dropped off Jose AVENDANO near the FBI SD UCE's vehicle. AVENDANO then provided the UCE with the bulk cash which totaled approximately 119,920.

20. On August 10, 2017, The FBI SD UCE advised FBI CI that they had been requested to pick up $120,000 in Cincinnati, Ohio from "GORDO" who is utilizing telephone 513-869-3604. Investigators believe that "GORDO" is Jose AVENDANO and the $120,000 is bulk cash proceeds from Michael ANDERSON.

21. Throughout the investigation, law enforcement has identified that Jose AVENDANO and Michael ANDERSON routinely change their telephone. This is indicative of an individual who is trying to evade law enforcement and common among individuals engaged in drug trafficking organizations. Based on the activities observed by the drug trafficking organization, along with what AVENDANO has told the FBI SD UCE, AVENDANO and ANDERSON are engaged in a drug trafficking partnership in which AVENDANO is responsible

for moving the bulk cash narcotic proceeds from ANDERSON to the Mexican narcotic suppliers, while ANDERSON is responsible for the sale of narcotics and the collection of narcotic cash proceeds. Investigators have a critical need to be able to identify which telephone numbers both AVENDANO and ANDERSON are using at any given time.

22. Through my training and experience, I know that narcotics traffickers commonly communicate via cellphones, and that narcotics traffickers and money launderers also typically utilize more than one cellular telephone and / or means of communication. In my experience, when such multiple cellular telephones are used (usually referred to as drop phones) by these narcotics traffickers it is done as a means of keeping law enforcement from associating specific phone numbers with specific criminal actors, and to isolate certain kinds of criminal activities from other kinds (e.g., narcotics transactions versus communications with sources of supply). Further, such phones are also usually associated with pre-paid cellular service so that narcotics traffickers do not have to supply the carriers of such cellular service with valid identification or address information to attain these services. In this investigation, I submit that it is reasonable to find that, given the money laundering activities detailed above, other cellular phones or means of communication are being utilized by AVENDANO, ANDERSON, and other co-conspirators, and that the requested warrant is reasonable in all regards.

23. Accordingly, it is believed that the information provided by the requested warrant will assist in the physical surveillance of AVENDANO and ANDERSON, identification of all cellular telephones they are utilizing, and will likely to lead to other co-conspirators, including his source of supply and could ultimately lead to the dismantlement of the organization

### MANNER OF EXECUTION

24. In my training and experience, I have learned that cellular phones and other cellular devices communicate wirelessly across a network of cellular infrastructure, including towers that

route and connect individual communications. When sending or receiving a communication, a cellular device broadcasts certain signals to the cellular tower that is routing its communication. These signals include a cellular device's unique identifiers.

25. To facilitate execution of this warrant, law enforcement may use an investigative device that sends signals to nearby cellular devices, including the Target Cellular Device, and in reply, the nearby cellular devices will broadcast signals that include their unique identifiers. The investigative device may function in some respects like a cellular tower, except that it will not be connected to the cellular network and cannot be used by a cell to communicate with others. Law enforcement will use this investigative device when they have reason to believe that Michael Wayne ANDERSON is present. Law enforcement will collect the identifiers emitted by cellular devices in the immediate vicinity of the Target Cellular Device when the subject is in multiple locations and/or multiple times at a common location and use this information to identify the Target Cellular Device, as only the Target Cellular Device's unique identifiers will be present in all or nearly all locations. Once investigators ascertain the identity of the Target Cellular Device, they will cease using the investigative technique. Because there is probable cause to determine the identity of the Target Cellular Device, there is probable cause to use the investigative technique described by the warrant to determine the identity of the Target Cellular Device.

26. The investigative device may interrupt cellular service of cellular devices within its immediate vicinity. Any service disruption will be brief and temporary, and all operations will attempt to limit the interference cellular devices. Once law enforcement has identified the Target Cellular Device, it will delete all information concerning non-targeted cellular devices. Absent further order of the court, law enforcement will make no investigative use of information concerning non-targeted cellular devices other than distinguishing the Target Cellular Device from all other devices.

## AUTHORIZATION REQUEST

27. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41. The proposed warrant also will function as a pen register order under 18 U.S.C. § 3123.

28. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days from the end of the period of authorized surveillance. This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the person carrying the Target Cellular Device would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). There is reasonable necessity for the use of the technique described above, for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

29. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to identify the Target Cellular Device outside of daytime hours.

30. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

31. A search warrant may not be legally necessary to compel the investigative technique described herein. Nevertheless, I hereby submit this warrant application out of an abundance of caution.

Respectfully submitted,

*[signature]*

Matthew F. Wenker
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on this 22 day of August 2017.

*[signature]*

HONORABLE KAREN L. LITKOVITZ
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

This warrant authorizes the use of the electronic investigative technique described in Attachment B when the officers to whom it is directed have reason to believe that Michael Wayne ANDERSON is present.

## ATTACHMENT B

The "Target Cellular Device" is the cellular device or devices carried by Michael Wayne ANDERSON. Pursuant to an investigation of Michael Wayne ANDERSON for violations of federal criminal laws, including, but not limited to: conspiracy to launder monetary instruments, in violation of 18 U.S.C. § 1956(h); the distribution of controlled substances, in violation of 21 U.S.C. § 841(a)(1); use of a communication facility in the commission of controlled substances trafficking offenses, in violation of 21 U.S.C. § 843(b); and conspiracy to commit controlled substances trafficking offenses, in violation of 21 U.S.C. § 846, this warrant authorizes the officers to whom it is directed to identify the Target Cellular Device by collecting radio signals, including the unique identifiers, emitted by the Target Cellular Device and other cellular devices in its vicinity for a period of thirty days, during all times of day and night.

Absent further order of a court, law enforcement will make no affirmative investigative use of any identifiers collected from cellular devices other than the Target Cellular Device, except to identify the Target Cellular Device and distinguish it from the other cellular devices. Once investigators ascertain the identity of the Target Cellular Device, they will end the collection, and any information collected concerning cellular devices other than the Target Cellular Device will be deleted.

This warrant does not authorize the interception of any telephone calls, text messages, or other electronic communications, and this warrant prohibits the seizure of any tangible property. The Court finds reasonable necessity for the use of the technique authorized above. *See* 18 U.S.C. § 3103a(b)(2).

## AO 106   Attachment

    See Affidavit in Support of an Application for a Search Warrant. To ensure technical compliance with the Pen Register Statute, 18 U.S.C. §§ 3121-3127, this warrant also functions as a pen register order. Consistent with the requirement for an application for a pen register order, I certify that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by Federal Bureau of Investigation. *See* 18 U.S.C. §§ 3122(b), 3123(b).

    I declare under penalty of perjury that the foregoing is true and correct.

08/17/2017  
DATE

*s/Karl P Kadon*  
KARL P. KADON (#0009324)  
Assistant United States Attorney